# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| ROZANNE E. BAZINET, | CASE NO. 07CV232 BTM (NLS) |
|---|---|
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| MICHAEL J. ASTRUE, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Rozanne Bazinet alleges that she became disabled as of December 1, 2000 due to spastic colon, fibromyalgia, vertigo, chronic fatigue, impaired gastrointestinal function, a neurological impairment, and chronic temporomandibular joint dysfunction. (Tr.19) Plaintiff's application for Disability Insurance Benefits under the Social Security Act ("Act") was denied initially and on reconsideration. (Tr. 37-42) Plaintiff filed a request for hearing and testified at the hearing on March 9, 2006. (Tr. 43-45, 703-718)  The Administrative Law Judge ("ALJ") denied benefits in a decision dated May 23, 2006, concluding that Plaintiff was not disabled within the meaning of the Act. (Tr. 15-29)  The decision of the Social Security Administration became final when the Appeals Council denied Plaintiff's request for review. (Tr. 3-6) Plaintiff then commenced this action, seeking judicial review under 42 U.S.C. § 405(g).

Plaintiff has filed a motion for summary judgment and Defendant has filed a cross-

motion for summary judgment. For the reasons discussed below, Plaintiff's motion for summary judgment is GRANTED, Defendant's cross-motion is DENIED, and the case is remanded to the ALJ for a calculation of benefits.

## II. FACTUAL BACKGROUND

Plaintiff was born in August 1949.  She has a college education and a Ph.D. and had a successful private practice as a psychologist before the onset of her alleged disability. Dr. Bazinet alleges that she became disabled on December 1, 2000 as a result of a combination of spastic colon, fibromyalgia, vertigo, chronic fatigue, impaired gastrointestinal function, a neurological impairment, and chronic temporomandibular joint dysfunction. Below are relevant excepts from Plaintiff's medical record.

Plaintiff was examined by Isaac Silberman, M.D., on June 27, 2000 (Tr. 251-62). At that time, Dr. Silberman noted patient suffered symptoms including, "upper GI symptoms," "generalized fatigue as well as hip, neck shoulder and back pain" and sensitivity to chemicals and other substances accompanied by "headaches, intestinal cramping and mental fogginess." (Tr. 251) Dr. Silberman diagnosed irritable bowel syndrome, migraines, multiple chemical sensitivities, and myofascial pain syndrome. (Tr. 252)

Plaintiff was also treated by Charles Moss, M.D., from June 27, 2000 through November 14, 2000. (Tr. 263-291) His notes contain references to chronic diarrhea, pain in hips, joints, shoulders and neck, mold sensitivity, allergies and gastrointestinal complaints. (Tr. 289-91)

At the March 9, 2006 hearing before the ALJ, Plaintiff testified that she was unable to work as of December 1, 2000 due to multiple symptoms.  She identified symptoms of ongoing irritable bowel syndrome such as having attacks of diarrhea ten to fifteen times a day, allergies to molds, chemicals and inhalant sprays and fumes, vertigo, ongoing headaches, and chronic pain in her hands, fingers, neck, jaw, teeth and hips. (Tr. 707-708, 712) Plaintiff testified that she is always in pain, ranging from a 3 to 4 pain level on average and sometimes reaching 8 on bad days. (Tr. 708) Plaintiff explained that she needs to rest during the day and that she takes at least one nap per day that lasts for an hour. (Tr. 709)

1  She further stated that she cannot track her thoughts, gets overwhelmed, cannot follow
2  directions, and makes mistakes. (Tr. 714) Plaintiff testified that she could do some chores
3  such as washing dishes but only if she went slowly and at her own pace. (Tr. 715-716) After
4  doing such chores, however, she would be fatigued and need to rest. (Id.)

5  Board certified psychiatrist Sidney Bolter, M.D. testified as a medical expert at the
6  administrative hearing at the ALJ's request. Based solely on a review of "various neuro-
7  psych" reports, Dr. Bolter opined that Plaintiff, based on her cognitive limitations, could work
8  as long as limited to simple non-public tasks, with minimal contact with peers and
9  supervisors. (Tr. 726)

10  Board certified neurologist Victor Schorn, M.D. testified as a medical expert at the
11  administrative hearing at the ALJ's request. Dr. Schorn found that Plaintiff equaled the listing
12  12.07 for a somatoform disorder as of December 1, 2000 and noted that Plaintiff had also
13  been diagnosed with chronic fatigue syndrome and fibromyalgia. (Tr. 727-728, 703). Dr.
14  Schorn found that Plaintiff would be moderately limited in her activities of daily living,
15  markedly limited in social functioning, and markedly limited in her ability to maintain
16  concentration persistence and pace in work or a work-like setting. (TR 729-730). He
17  therefore concluded that Plaintiff was disabled.

18  Vocational expert Nelly Katsell also testified at the administrative hearing. The
19  vocational expert indicated that with the specified limitations of light work involving "simple
20  repetitive tasks, non-public, minimal contact with peers and supervisors," Plaintiff could fill
21  positions such as garment sorter, small products assembler, and presser. (TR 734)

22  On May 23, 2006, the ALJ issued a decision finding that Dr. Bazinet was not disabled.
23  At step one of the five step sequential evaluation process, the ALJ found that Plaintiff had
24  not worked since the onset of her disability. At step two, the ALJ found Plaintiff severely
25  impaired due to irritable bowel syndrome and other gastrointestinal problems; mild toxic/
26  metabolic encephalopathy with organic brain dysfunction; and chronic fatigue. At step three,
27  ALJ Steinman found that Plaintiff's medically determinable impairments did not meet or
28  medically equal any of the listings of impairments. The ALJ found that Plaintiff retained the

residual functional capacity for work at the light exertion level with the limitation to simple, repetitive tasks, no public contact, and minimal contact with peers and supervisors. At step four, the ALJ found that Dr. Bazinet could not perform her past work as a psychologist. At step five, based on the testimony of the vocational witness, the ALJ found that Dr. Bazinet could do other work such as the jobs of garment sorter, small products assembly, and presser. (Tr.19-28)

### III. STANDARD OF REVIEW

The Commissioner's denial of benefits may be set aside if it is not supported by substantial evidence or is based on legal error. Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986). Substantial evidence is more than a scintilla, but less than a preponderance. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports the decision, a district court must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the decision. Id. The court must uphold the decision if the evidence can reasonably support either affirming or reversing the ALJ's conclusion. Id. at 720-21.

To qualify for disability benefits, the claimant must show that a medically determinable physical or mental impairment prevents her from engaging in substantial gainful activity, and the impairment is expected to result in death or has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Reddick, 157 F.3d at 721. The claimant carries the initial burden of proving disability. 42 U.S.C. § 423(d)(5); Reddick, 157 F.3d at 721. If the claimant establishes that she is unable to do her prior work, the burden shifts to the defendant to show that the claimant can perform other substantial gainful work that exists in the national economy. Reddick, 157 F.3d at 721.

The determination of whether a claimant is disabled is governed by a five-step

process as follows: (1) Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, the evaluation proceeds to step two. (2) Does the claimant have a "severe" impairment? If so, the evaluation proceeds to step three. If not, the claimant is not disabled. (3) Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, the evaluation proceeds to step four. (4) Is the claimant capable of performing past work? If so, the claimant is not disabled. If not, the evaluation proceeds to step five. (5) Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. See 20 C.F.R. § 404.1520; see also Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

**IV. DISCUSSION**

Plaintiff contends that the ALJ's reasons for discrediting her allegations of pain were legally insufficient. Once the claimant produces evidence of an underlying impairment, the ALJ may not discredit the testimony as to the severity of the pain merely because it is unsupported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). The ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony unless there is affirmative evidence that the claimant is malingering. Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989). The ALJ also must identify what testimony is not credible and what evidence undermines the claimant's complaints. Lester, 81 F.3d at 834.

The Court notes that the ALJ's opinion does not note any presence of malingering. The Court must therefore determine whether the reasons given by the ALJ for rejecting Plaintiff's testimony as to the severity of her alleged pain symptoms are clear and convincing.

First, the ALJ found that the objective medical evidence in Plaintiff's medical record prior to December 2000 did not support the conclusion that Plaintiff was disabled and precluded from doing all work. (TR.26) As the ALJ himself notes, the medical evidence establishes that Plaintiff suffered from the following severe impairments during the relevant

time period: (1) irritable bowel syndrome and other gastrointestinal problems; (2) mild toxic/metabolic encephalopathy with organic brain dysfunction; (3) and chronic fatigue. Because Plaintiff produced evidence of underlying impairments, the ALJ could not properly discredit Plaintiff's pain testimony based on a lack of objective medical evidence. See Bunnell, 947 F.2d at 343. The Court therefore finds that the ALJ's first reason is not clear and convincing. Indeed, when the vocational expert (VE) was asked whether Plaintiff could perform any work given the conditions of avoiding fumes and using the restroom 10-15 times a day, the VE testified that she would not be able to do any work. (Tr. 736-37) The same conclusion was reached by the VE if Plaintiff would miss 4 days a month due to illness. Given the irritable bowel syndrome, allergies and chronic fatigue, Plaintiff would likely miss several days of work each month. The medical records support the existence of these conditions prior to December 1, 2000. Thus it was error to reject Plaintiff's credibility in this regard.

Second, the ALJ found that the "description of symptoms prior to December 2000 given by the claimant's treating and examining physicians do not support the allegation that the claimant is disabled." (Tr. 27) To the contrary, although the doctors' notes in question do not state explicitly that the symptoms are disabling, the symptoms noted by physicians during the year 2000 corroborate Plaintiff's description of her symptoms during the ALJ hearing. Dr. Silberman noted gastrointestinal symptoms, fatigue, general pain and also a painful sensitivity to chemicals. (Tr. 251) Dr. Moss's treatment notes also contain references to chronic diarrhea, pain in hips, joints, shoulders and neck, mold sensitivity, allergies and gastrointestinal complaints. (Tr. 289-91). These symptoms noted in Plaintiff's medical records shortly prior to the alleged disability onset date are consistent with Plaintiff's testimony that during this time period she was in constant pain ranging from level 3 or 4 to 8 due to a combination of her diarrhea, chemical sensitivity, and pain in her limbs. The ALJ has identified no convincing reason to disbelieve Plaintiff's allegations regarding her level of pain as a result of these symptoms. Nor has the ALJ articulated any reason to disbelieve her testimony that she is also fatigued to the point that she can only do simple chores slowly and

needs rest after the performance of any such chores. Finally, there is no basis to reject the fact that Plaintiff would have to use the restroom 10 to 15 times per day and would have to miss work several days a month.  The Court therefore finds that the ALJ's second reason is not clear and convincing.

Third, the ALJ notes that he incorporated Plaintiff's pain and symptom allegations into his finding of residual functional capacity.  The Court disagrees.  Plaintiff testified that during the relevant time period, in addition to her constant pain levels, she suffered from diarrhea 10-15 times a day (Tr. 712), was unable to sit for long periods of time because of pain in her hip (Tr. 710), needed to rest after even mild chores. (Tr. 715-716), and takes a nap during the day (Tr. 709).  The ALJ's finding of residual capacity and his hypothetical to the vocational expert do not take into consideration Plaintiff's need for frequent breaks due to diarrhea and pain, inability to remain seated, or just generalized fatigue. (Tr. 23) When the need to take frequent breaks due to diarrhea were added to the hypothetical, the VE testified that Plaintiff could not do any work. (Tr. 736-37) These limitations are not consistent with the ALJ's finding that Plaintiff is capable of the full range of light work consisting of simple, repetitive tasks involving no public contact and minimal contact with peers and supervisors.

For the reasons set forth above, the Court concludes that the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's pain testimony.[1] The Court should credit evidence rejected by the ALJ as true and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) there are no outstanding issues that must be resolved before the disability determination can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).  During the ALJ hearing,  the vocational expert was asked to consider a hypothetical which incorporated some of the pain testimony given by Plaintiff. When asked whether Plaintiff could work at the light jobs identified if she had to use the bathroom 10 to 15 times a day due

---

[1] While the Court finds the ALJ's reasons for rejecting the opinion of Dr. Schorn problematic, the Court declines to reach the issue of whether the ALJ erred on this ground because the Court decides that the ALJ should have credited Plaintiff's pain testimony.

1 | to her gastrointestinal condition or miss about 4 days a month due to her pain and fatigue,
2 | the vocational expert testified that Plaintiff could not sustain a job under those conditions.
3 | (Tr. 736-737)  If Plaintiff's allegations of pain in her limbs, chronic diarrhea, chronic fatigue,
4 | need for frequent breaks and painful sensitivity to the environment were credited, the ALJ
5 | would be required to find that Plaintiff is disabled.  The Court therefore GRANTS Plaintiff's
6 | motion for summary judgment [Doc. 11], DENIES Defendant's cross-motion for summary
7 | judgment [Doc. 14] , and  REMANDS this case for an award of benefits.   The Court also
8 | GRANTS Defendant's motion to substitute attorney [Doc. 12].
9 | IT IS SO ORDERED.
10 | DATED:  February 19, 2008

_____
Honorable Barry Ted Moskowitz
United States District Judge